UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **WILLIAM R. SATTERFIELD,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 06-CV-0501-CVE-PJC |
| ) | |
| **CITY OF TULSA, TULSA AIRPORT** ) | |
| **AUTHORITY, JEFF MULDER,** ) | |
| **JEFF HOUGH, RICHARD LLOYD** ) | |
| **JONES, Jr. AIRPORT, STEVE** ) | |
| **MUSHRUSH, and JOHN DOE,** ) | |
| ) | |
| **Defendants.** ) | |

## OPINION AND ORDER

Now before the Court is defendants' Motion to Dismiss Amended Complaint and, in the Alternative, Motion for Summary Judgment Pursuant to FRCP Rule 12(b)(6) (Dkt. # 18). Defendants argue that plaintiff lacks standing to file this lawsuit, because plaintiff's claims against defendants are the property of his bankruptcy estate.

### I.

Plaintiff William R. Satterfield ("Satterfield") alleges that he acquired 10 acres of land in 1973 and built a home on the land in 1985. Satterfield subsequently purchased a 20 acre tract of land adjacent to the Richard Lloyd Jones, Jr. Airport ("the Airport") and another 40 acres adjacent to both the 20 acres and the Airport. In 2004, Satterfield decided to develop the 60 acres adjacent to the Airport and he alleges that he constructed a sewer system on the land to prepare the land for development. Satterfield intended to develop the land by constructing a housing development, and he contacted the Tulsa Zoning Board ("the Board") to seek rezoning of the 60 acres. The Board denied Satterfield's proposal to zone the land for residential development. Satterfield alleges that

the reason given for the denial was that the Tulsa Airport Authority opposed Satterfield's proposed use of the land. Satterfield states that he appealed the Board's denial of his request for rezoning to the Tulsa City Council ("City Council"), and he requested a hearing before the City Council. Following a hearing before the City Council, the Board's decision to deny Satterfield's zoning request was affirmed by the City Council.

Satterfield claims that the Airport opposed his desire to develop the 60 acres because the Airport intended to purchase the land as part of its future expansion. After Satterfield's request to rezone his land for residential development was denied by the Board and the City Council, he attempted to obtain financing to construct an industrial park on his 60 acres adjacent to the Airport. He claims that he could not obtain financing for this project because lenders believed that the Airport would not permit Satterfield to develop the land. Satterfield states that he "gave up on his dreams and went on tending to his several properties he had acquired over the years." Dkt. # 16, at 3.

On August 16, 2004, Satterfield filed a petition for relief under Chapter 11 of the United States Bankruptcy Code, but the bankruptcy court converted plaintiff's bankruptcy to a Chapter 7 proceeding. Satterfield sought a homestead exemption for the 10 acre tract of land and the house located on the property. The bankruptcy court limited Satterfield's homestead exemption in the house to $5,000, because Satterfield used more than 25 percent of the house for business purposes. Satterfield did not request an exemption for the other 60 acres of land. Based on the allegations of plaintiff's amended complaint, Satterfield's 60 acres of land adjacent to the Airport have not been abandoned by the bankruptcy trustee and this property is still an asset of the bankruptcy estate. He

has not made any allegation that he intended to develop the 10 acres for which he obtained a limited homestead exemption.

Even though he filed for bankruptcy, Satterfield continued to investigate the Tulsa Airport Authority's opposition to his proposed development of the 60 acres. He claims that he discovered new information, specifically an update to the master plan of the Airport, showing that the Airport had been using his property for many years without his permission. Satterfield filed this lawsuit on September 21, 2006 alleging that defendants violated his rights under the Unites States Constitution. He claims that the Airport illegally prevented Satterfield from constructing a housing development on the 60 acres of land adjacent to the Airport and that the Airport blocked Satterfield's attempt to build a $20 million industrial park on the same land. He also alleges that the Airport infringed on his private property rights by using Satterfield's 60 acres without his permission. Satterfield filed an amended complaint clarifying that his constitutional claims are based on the doctrine of inverse condemnation under the Fifth Amendment of the United States Constitution. Defendants argue that plaintiff lacks standing to pursue his claims because plaintiff's claims are the property of the bankruptcy estate.

## II.

When reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must construe the allegations of the complaint as true and view the allegations in the light most favorable to the

3

nonmoving party.[1] Moffett v. Halliburton Energy Services, Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). A Rule 12(b)(6) motion "should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Sutton v. Utah State School for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007).

In this case, plaintiff is proceeding pro se and, consistent with Supreme Court and Tenth Circuit precedent, the Court will construe his pro se pleadings liberally when ruling on defendants' motion to dismiss. Haines v. Kerner, 404 U.S. 519, 520 (1972); Gaines v. Stenseng, 292 F.3d 1222, 1224 (10th Cir. 2002). "Although '[a] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers,' . . . 'pro se parties [must] follow the same rules of procedure that govern other litigants.'" Garrett v. Selby Connor Maddux

---

[1] Defendants "ask the Court, for purpose of this Motion only, to accept the factual averments of Plaintiff in his Complaint, Amended Complaint, and Reply [Response] to Defendants' original Motion to Dismiss as herein identified, to be true for the purpose of converting this Motion to Dismiss Amended Complaint to a Motion for Summary Judgment pursuant to F.R.C.P. 12(b)(6)." Dkt. # 18. Based on defendants' own statement, it does not appear that defendants are asking the Court to consider any evidence outside the pleadings. Plaintiff's response to defendants' original motion to dismiss does not cite any matters outside the pleadings and contains legal arguments only. In addition, both parties have cited public records, including orders from the United States Bankruptcy Court for the Northern District of Oklahoma and land deeds. However, a court is permitted to "take judicial notice of its own files and records, as well as facts which are a matter of public record," without converting a Rule 12(b)(6) motion into a motion for summary judgment. Tal v. Hogan, 453 F.3d 1244, 1265 (10th Cir. 2006). Therefore, the Court will treat defendants' motion as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) and the Court will construe the facts alleged in the amended complaint as true when ruling on defendant's motion.

& Janer, 425 F.3d 836, 840 (10th Cir. 2005) (quoting Nielsen v. Price, 17 F.3d 1276, 1277 (10th Cir. 1994)).

### III.

One of the foundational principles of bankruptcy law is that the bankruptcy estate acquires "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a). The property of the estate includes any legal claims existing, whether or not filed in a court, at the time the bankruptcy petition was filed. Stanley v. Trinchard, 500 F.3d 411, 418 (5th Cir. 2007); Barger v. City of Cartersville, Georgia, 348 F.3d 1289 (11th Cir. 2003); Wieburg v. GTE Southwest Inc., 272 F.3d 302 (5th Cir. 2001); In re Polis, 217 F.3d 899 (7th Cir. 2000). Once a bankruptcy petition is filed, the bankruptcy trustee "stands in the shoes of the debtor, and the trustee alone has standing to file legal claims belonging to the bankruptcy estate." Sender v. Simon, 84 F.3d 1299 (10th Cir. 1996). For purposes of Fed. R. Civ. P. 17, the bankruptcy trustee, rather than the debtor, is the real party in interest in any claims belonging to the bankruptcy estate. Wieburg v. GTE Southwest Inc., 272 F.3d 302, 306 (5th Cir. 2001); Feist v. Consolidated Freightways Corp., 100 F. Supp. 273, 274 (E.D. Pa. 1999).

In this case, the claims raised in plaintiff's amended complaint arose before plaintiff filed his bankruptcy petition in 2004, and the claims belong to the bankruptcy estate. Plaintiff alleges that he attempted to develop the 60 acres of land adjacent to the Airport before he filed his bankruptcy petition and, even though he claims he discovered additional information supporting his claims after filing for bankruptcy, he does not dispute that his claims arose before his bankruptcy petition was filed. See Dkt. # 16, at 3-4; Dkt. # 30, at 2. Plaintiff acknowledges that any cause of action that accrues before a bankruptcy petition is filed becomes part of the bankruptcy estate, but he claims

5

that this "is not the end of the issue for purposes of whether [plaintiff] has standing to bring the present suit." Dkt. # 30, at 1-2.

Plaintiff asserts four arguments in an attempt to show that he should be permitted to proceed with his lawsuit: (1) the merits of his lawsuit are "sound" and his case would not be dismissed if he had not filed for bankruptcy; (2) defendants' monetary liability exceeds plaintiff's liability to his creditors; (3) plaintiff did not understand the severity of defendants' alleged misconduct at the time he filed this lawsuit; and (4) there are genuine issues of material fact preventing summary disposition of this case. All of these arguments address the merits of plaintiff's claims rather than his standing to bring this lawsuit. It is clear that plaintiff believes the Airport has committed inverse condemnation by interfering with his attempts to develop his 60 acres of land, but plaintiff's interest in the subject property of this lawsuit belongs to the bankruptcy estate. He has not made any attempt to show that he, rather than the bankruptcy trustee, is the proper party to bring this lawsuit, and he ignores clearly established law showing that his claims are the property of the bankruptcy estate. Plaintiff argues that he should be permitted to proceed with this lawsuit because, even if he lacks standing, the merits of his claims are sound. However, the Court does not have the authority to consider the merits of plaintiff's claims if he lacks standing. See Log Furniture, Inc. v. Call, 180 Fed. Appx. 785, 788 (10th Cir. 2006) (refusing to consider merits of lawsuit when the bankruptcy trustee, not the corporation in bankruptcy, had standing to file the lawsuit);[2] Turner v. Cook, 362 F.3d 1219, 1225-26 (9th Cir. 2004) (debtor failed to produce evidence that bankruptcy estate abandoned claim and, thus, debtor lacked standing to proceed with his lawsuit).

---

[2]  Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

6

The bankruptcy trustee, not plaintiff, has standing to bring a claim for inverse condemnation against defendants, because the claim is the property of the bankruptcy estate.[3] The allegations of the amended complaint establish that the facts giving rise to plaintiff's claim occurred before plaintiff filed for bankruptcy, and plaintiff has not made any allegation that the bankruptcy trustee has abandoned plaintiff's claims against the Airport. He acknowledges that his pre-petition property, including causes of action, belong to the bankruptcy estate. Dkt. # 30, at 2. The law is clear that plaintiff does not have standing to proceed with this lawsuit and, contrary to plaintiff's suggestion, the Court can not simply overlook plaintiff's lack of standing. This lawsuit must be dismissed due to plaintiff's lack of standing, and the decision to refile any claims asserted in this lawsuit belongs solely to the bankruptcy trustee.

**IT IS THEREFORE ORDERED** that defendants' Motion to Dismiss Amended Complaint and, in the Alternative, Motion for Summary Judgment Pursuant to FRCP Rule 12(b)(6) (Dkt. # 18) is **granted**. This is a final order terminating this case.

**DATED** this 8th day of January, 2008.

_Claire V. Eagan_
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[3] Plaintiff argues that the bankruptcy trustee is reluctant to pursue a claim for inverse condemnation on behalf of the bankruptcy estate. Dkt. # 34, at 2. However, the bankruptcy trustee's decision to file an inverse condemnation claim against defendants is discretionary, and, unless the bankruptcy trustee formally abandons plaintiff's claims, his decision has no impact on plaintiff's standing to file this lawsuit. See Turner, 362 F.3d at 1226.